IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES : | |
| : | |
| v. : | Case No.  SAG-21-cr-391 |
| : | |
| DAVON JOHNSON, : | |
| : | |
| Defendant : | |

## MOTION TO SUPPRESS TANGIBLE EVIDENCE

Davon Johnson, the defendant, by and through his attorneys, Katherine Tang Newberger, and Cynthia Frezzo, Assistant Federal Public Defenders, respectfully moves this Honorable Court pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure to suppress all evidence seized on March 29, 2021, because Baltimore City Police Officer Randolph Perrin's warrantless arrest of Mr. Johnson violated the Fourth Amendment.

More specifically, Officer Perrin, who himself was arrested on September 10, 2022, and charged with first- and second-degree assault in the District Court for Baltimore City, did not have probable cause to arrest Mr. Johnson.  Officer Perrin's unrecorded observations provide the basis for Mr. Johnson's arrest.  At the evidentiary hearing scheduled for January 27, 2022, *see* ECF No. 37, the Court will hear from Officer Perrin, if he does not invoke his Fifth Amendment right to remain silent because of the pending criminal case against him, and view the body-worn camera footage that began recording after the alleged observations.  The cross-examination of Officer Perrin and close examination of his body-worn camera footage, as well as other evidence that may be introduced at the hearing, will demonstrate that what Officer Perrin observed does not amount to probable cause.

1

**PROCEDURAL BACKGROUND**

Mr. Johnson has been charged in a three-count indictment with possessing a firearm on March 29, 2021, after having been convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count One); possession with intent to distribute a mixture or substance containing cocaine and a mixture or substance containing fentanyl and tramadol, in violation of 21 U.S.C. § 841 (Count Two); and possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Three). The maximum possible penalty on Count One is 10 years; the maximum possible penalty on Count Two is 20 years; and a 5-year mandatory-minimum penalty applies to Count Three.

Mr. Johnson was in continuous custody from March 29, 2021, until September 14, 2022 (almost 18 months). He was initially charged in the District Court for Baltimore City and then the Circuit Court. Although his state charges were dropped in favor of federal prosecution, he remained in state custody on a violation of probation petition because, at the time of his arrest, he was on probation for indecent exposure, for which he is backing up one year, nine months and 20 days, according to the pretrial service report in this case.

Mr. Johnson made his initial appearance in federal court on October 20, 2021, pursuant to a writ and consented to detention because he was in primary state custody pending the disposition of the violation of probation. On August 12, 2022, a Circuit Court judge released Mr. Johnson on his own recognizance on the violation petition and he came into federal custody. The parties scheduled a detention hearing for September 14, 2022.

The day of the detention hearing, the Assistant United States Attorneys prosecuting Mr. Johnson's case informed defense counsel that they had just learned that Officer Perrin had been arrested and charged with first- and second-degree assault. *See* Exhibit 1 (Statement of Probable

Cause against Officer Perrin).[1]  At the detention hearing, the parties jointly recommended that Mr. Johnson be released to electronically-monitored house arrest.  Judge Coulson released him that day.  ECF No. 39.

Even before the news of Officer Perrin's arrest, the Court had issued a schedule—at the request of the parties—for litigating this motion to suppress as well as a forthcoming motion *in limine* seeking to question Officer Perrin about his own disciplinary matters.  Per the schedule set by the Court, the motion *in limine* is due on November 28, 2022.  ECF No. 37.

## FACTUAL BACKGROUND

According to the Baltimore Police Department's incident report and body-worn camera footage provided in discovery in this case, Officer Randolph Perrin, a uniformed officer, was driving southbound on York Road in a marked squad car.  Shortly after passing the intersection of York Road and Richwood Avenue, which intersects only the east side of York Road and, thus, was on the opposite side of York Road from the south-bound lane in which Officer Perrin was driving, Officer Perrin turned on his body-worn camera.  He made a U-turn, pulled his squad car over to the side of the road, got out of his squad car, and chased Mr. Johnson down the 500 block of Richwood Avenue in Baltimore City.  Officer Perrin quickly caught up to Mr. Johnson, grabbed him and cuffed one of his hands.  Although Mr. Johnson did not let his second wrist go limp to make it easier to cuff it, asking why Officer Perrin jumped out on him and on what basis he was being arrested, at all times Officer Perrin and a second officer had Mr. Johnson under their physical control.  He was clearly under arrest and not free to leave.

---

[1] The alleged victim's name has been redacted from the report, as well as Officer Perrin's address, the place the alleged assault occurred.

Subsequent to arresting Mr. Johnson, police recovered vials of drugs that had been strewn on the street when someone reached into Mr. Johnson's coat pocket and dislodged a plastic bag while the police were attempting to cuff him.  A little more than three minutes after Mr. Johnson was cuffed and seated on a curb, different officers searched him and a backpack he was wearing on his chest.  An officer allegedly recovered the firearm that gives rise to Counts One and Three from inside the backpack.

## LEGAL STANDARD

The Government has the burden to justify a warrantless stop and search as occurred here. *United States v Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Gwinn*, 219 F.3d 326, 335 (4th Cir. 2000).  In order to arrest Mr. Johnson, Officer Perrin needed probable cause to do so. *Maryland v. Pringle*, 540 U.S. 366, 369 (2003).  Probable cause requires a belief of guilt based on "more than bare suspicion." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).  Probable cause for a valid arrest arises when "facts and circumstances with the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

This belief of guilt must be particularized to a specific individual. *Ybarra v. Illinois*, 444 U.S 85, 91 (1979).  The Court has specifically declined to find probable cause where a defendant was merely associated with and proximate to another person who police did have probable cause to arrest.  *See Ybarra*, 444 U.S. at 94; *see also Sibron v. New York*, 392 U.S. 40, 62 (1968) (declining to find probable cause where defendant was unknown to police, and had been observed speaking with known narcotics addicts for a period of eight hours, but where nothing about the

conversation was known, and where the officer saw nothing pass between the defendant and the addicts).

Moreover, probable cause cannot be supplied merely because an individual ran from police, an act which is "not necessarily indicative of wrongdoing."[2] *Illinois v. Wardlow*, 528 U.S. 199, 124 (2000). *See also Florida v. Bostick*, 501 U.S. 429, 437 (1991) (holding that the "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").

Whether probable cause exists depends on the totality of the circumstances viewed from the perspective of a reasonable police officer. *Pringle*, 540 U.S. at 371; *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Three days before Mr. Johnson's arrest, the Fourth Circuit provided guidance on the totality of the circumstances analysis. The Court found that when it comes to reasonable suspicion, a lesser standard than probable cause, "[s]eemingly innocent factors, when

---

[2] Courts have started to acknowledge that the history of negative interactions between the police and black men has made the decision to run from police an understandable one—even by those who are not engaged in wrong doing. *See Com. v. Warren*, 475 Mass. 530, 538-39 (2016) (holding that "flight to avoid [police] contact should be given little, if any, weight as a factor probative of reasonable suspicion" and that "where the suspect is a black male stopped by the police on the streets of Boston, the analysis of flight as a factor in the reasonable suspicion calculus cannot be divorced from the findings in a recent Boston Police Department (department) report documenting a pattern of racial profiling of black males in the city of Boston.") *See also United States v. Curry*, 965 F.3d 313, 332 (4th Cir. 2020) (Gregory, C.J., concurring) ("There's a long history of black and brown communities feeling unsafe in police presence."); *United States v. Brown*, 925 F.3d 1150, 1155, 1156 (9th Cir. 2019) ("the Court has a long history of recognizing that innocent people may reasonably flee from police" and "[i]n evaluating flight as a basis for reasonable suspicion, we cannot totally discount the issue of race."); *Wardlow*, 528 U.S. at 132-33 (Stevens, J., concurring in part and dissenting in part) ("Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous. … For such a person, unprovoked flight is neither 'aberrant' nor 'abnormal.'")

viewed together, can amount to reasonable suspicion." *United States v. Drakeford*, 992 F.3d 255, 263 (4th Cir. 2021) (internal quotation marks and citation omitted). But, the Fourth Circuit clarified, "the presence of additional facts might dispel reasonable suspicion. We are skeptical of Government attempts to spin . . . largely mundane acts into a web of deception. Accordingly, the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband." *Id.* (internal quotation marks and citations omitted). Furthermore, in *Drakeford*, Judge Wynn cautioned against deferring to the experience of a police officer to justify what could be an innocuous interaction to be something nefarious. He warned that "the more we defer to 'experience' as a placeholder for objective facts, the more variability we inject into the Fourth Amendment." *Id.* at 267 (Wynn, J., concurring).

## ARGUMENT

Officer Perrin lacked probable cause to arrest Mr. Johnson. The evidentiary hearing will call into question what exactly Officer Perrin saw and will further show that he ignored numerous situational factors that negated the likelihood that the interaction he claims to have seen between Mr. Johnson and Mr. [Redacted][3] amounted to probable cause to arrest Mr. Johnson.

In police reports, Officer Perrin justified arresting Mr. Johnson by stating that he "observed a CDS transaction between two suspects at the top of the 500 block of Richwood Avenue. The first suspect was later identified as Mr. Davon Cameron Johnson [date of birth omitted] and the other suspect was immediately identified as Mr. [Redacted]. Mr. Johnson was very clearly giving

---

[3] The name of the other individual has been redacted by the Government from the incident reports provided in discovery. Upon information and belief, the individual may have been a juvenile at the time. Thus, although the Defense thinks we know who he is based on a reference that Officer Perrin makes about him on the body-worn camera footage, he will be referred to in this motion as Mr. [Redacted].

6

Mr. [Redacted] something out of a black plastic bag." Exhibit 2 (Redacted Incident Report).[4] Although Officer Perrin claims in the incident report that he "observed a CDS transaction" he admits two sentences later that what he actually saw was Mr. Johnson "clearly giving Mr. [Redacted] something out of a black plastic bag." *Id.*

Officer Perrin clearly knew Mr. [Redacted] prior to this incident. In fact, after arresting Mr. Johnson, who he did not appear to know at the time of the arrest, Officer Perrin is captured on body-worn camera footage stating "I want [ ]," the nickname of Mr. [Redacted]. The Defense asserts that an evidentiary hearing on this Motion will call into question whether Officer Perrin actually did see Mr. Johnson "clearly giving Mr. [Redacted] something out of black plastic bag." But, even if the Court credits his testimony, that is not sufficient to establish probable cause to arrest Mr. Johnson given other factors.

In *United States v. Drakeford*, the U.S. Court of Appeals for the Fourth Circuit explained that a handshake between a suspected drug dealer and another individual, which an experienced police officer believed to be a hand-to-hand drug transaction, did not give rise to even reasonable suspicion to stop the suspected drug dealer. *See Drakeford*, 992 F.3d 255. In *Drakeford*, law enforcement had undertaken a multi-month investigation of Drakeford based on tips from a confidential informant. On previous occasions, they had witnessed what they had believed to be a drug transaction between Drakeford and a customer at a gas station; seen Drakeford drive to another gas station and wait; and witnessed him enter a house empty handed, then leave with a bag and call the confidential informant to say he had drugs to sell. Based on those prior observations,

---

[4] The U.S. Attorney's Office redacted the name of the other individual named in the incident report memorializing Mr. Johnson's arrest. The Defense has redacted a line toward the end of the report that incorrectly stated that Mr. Johnson had a particular felony conviction.

7

law enforcement stopped and searched Drakeford after seeing him shake the hand of someone in a parking lot of a Car Stereo Warehouse, interpreting the handshake to be a hand-to-hand transaction.

In concluding law enforcement did not have even reasonable suspicion to stop Drakeford, the Court explained that the officer's testimony that he had witnessed a hand-to-hand transaction was conclusory. The Court pointed out that he "never witnessed drugs or money change hands." *Drakeford*, 992 F.3d at 264. The Court further explained:

> The Government encourages us to look at this handshake within the totality of the circumstances. Even doing so, we cannot hold that officers' bare suspicion of drug trafficking—without more—can allow even an experienced officer to reasonably conclude that such a benign and common gesture can be viewed as an exchange of drugs. This cannot amount to reasonable, particularized suspicion. The Fourth Amendment does not allow the Government to label a person as a drug dealer and then view all of their actions through that lens.

*Id.*

Similarly, in this case, Officer Perrin asserts that he saw a "CDS transaction" but then indicates he only saw Mr. Johnson give Mr. [Redacted] "something out of a black plastic bag." Exhibit 2. Officer Perrin seems to have a history with Mr. [Redacted], which is the lens through which he prejudged Mr. Johnson's proximity to Mr. [Redacted]. Unlike in *Drakeford*, Officer Perrin is neither an experienced officer nor one whose judgment should be credited by the Court in determining whether he interpreted the scene correctly. As previously noted, he has been charged with first- and second-degree assault, and the statement of probable cause includes allegations that he destroyed evidence of the assault. Exhibit 1. In a separate motion in *limine*, the Defense will raise additional instances that will call into question Officer Perrin's judgment, understanding of the law, and impulsivity.

Furthermore, in this case, as in *Drakeford*, "when considered within the panoply of the totality of the circumstances," *Drakeford*, 992 F.3d at 264, Officer Perrin's observations did not amount to reasonable suspicion let alone probable cause. In *Drakeford*, the Court pointed out that the handshake at issue occurred "in broad daylight, in the middle of the afternoon, in a public parking lot, and in front of a security camera," and that after shaking hands, the men entered a Car Stereo Warehouse together, which appeared to be "a normal shopping trip." *Id.* at 265. Similarly, in this case, Officer Perrin's observation came in the early evening when, as captured by body-worn camera footage, there was still a good amount of daylight. Mr. Johnson and Mr. [Redacted] were not only standing in the open on a city block, but there were numerous people near them and neighbors milling about. Furthermore, Mr. Johnson had carryout food in a plastic bag in his hand, which can be seen as Officer Perrin attempts to cuff him. At an evidentiary hearing it will become clear that the totality of facts did not amount to reasonable suspicion, let alone the higher standard of probable cause that was necessary to justify the arrest of Mr. Johnson in this case.

The drugs and firearm recovered must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963). Evidence obtained from an unlawful search or seizure is the "fruit of the poisonous tree" because it "would not have come to light but for the illegal actions of the police." *Id*. at 488. Thus, all of the evidence that provides the basis for Counts One through Three of the indictment must be suppressed.

## CONCLUSION

As a result of the constitutional violations alleged herein and any other ground that may become apparent upon a hearing on the motion, Mr. Johnson requests that this Court enter an Order suppressing any evidence seized in connection with the illegal seizure noted above.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
KATHERINE TANG NEWBERGER (#27803)
CYNTHIA A. FREZZO (#817358)
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
Phone: (410) 962-3962
Fax:  (410) (410) 962-3976
Email: katherine_newberger@fd.org

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, the Defendant requests a hearing on this motion.

_____/s/_____
KATHERINE TANG NEWBERGER (#27803)
First Assistant Federal Public Defender