IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  SAG-21-cr-391** |
| | : | |
| **DAVON JOHNSON,** | : | |
| | : | |
| **Defendant** | : | |

## MOTION TO RECONSIDER DENIAL OF SUPPRESSION MOTION

Davon Johnson, the defendant, by and through his attorneys, Katherine Tang Newberger, and Cynthia Frezzo, Assistant Federal Public Defenders, respectfully moves this Honorable Court to reconsider the denial of his Motion to Suppress, ECF 40.  Since the evidentiary hearing on the motion and the Court's denial of the motion, ECF 69 & 70, evidence has emerged that vitiates the credibility of Randolph Perrin, whose testimony about what he alone and improbably observed was relied upon by the Court in upholding the arrest and subsequent search of Mr. Johnson.  More specifically, on April 11, 2023, Mr. Perrin was found guilty of second-degree assault and sentenced by Baltimore City Circuit Court Judge Barry Williams to five years, suspend all but time served, with 19 months of supervised probation.  Exhibit 1 (Transcript from April 11, 2023, *State v. Randolph Perrin*, Baltimore City Circuit Court Case No. 122279025).  We subsequently learned from the U.S. Attorney's Office that Mr. Perrin was fired from the Police Department.  Then over the course of the summer, the U.S. Attorney's Office disclosed that ████████████████

████████████████████████████████████████████████████████████████

1

██████████████████████████████████████████████████████.[1]  Each of these adjudications alone call Mr. Perrin's credibility generally and testimony at Mr. Johnson's motion hearing specifically into question.  But cumulatively they so undermine Mr. Perrin's credibility that the Court should reconsider its denial of Mr. Johnson's motion and suppress the evidence against him.

## PROCEDURAL BACKGROUND

This case arises from Mr. Johnson's arrest by Baltimore City Police on March 29, 2021. He was initially charged in Baltimore City District and then Circuit Court.  On September 29, 2021, a federal grand jury returned a three-count indictment, charging Mr. Johnson with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count 1); possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (Count 2); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count 3), ECF 1, and the state charges were dropped.  Mr. Johnson made his initial appearance on October 20, 2021.  ECF 6.  At that time, he consented to detention because he was being held in state custody on a violation of probation.  After securing his release on the violation of probation, he came into federal custody, and on September 14, 2022, the Court released Mr. Johnson on electronic monitoring with the consent of the parties.  ECF 39.

Mr. Johnson filed a motion to suppress the evidence in this case, ECF 40, arguing that then-Officer Perrin lacked either reasonable suspicion or probable cause to detain Mr. Johnson.  After fully briefing the motion to suppress, the parties litigated under seal the admissibility of some

---

[1] Because these incidents were disclosed pursuant to a Protective Order, ECF 23, any discussion of these matters will be redacted from the public filing of this motion.

incidents disclosed by the Government pursuant to a protective order. The Court ruled that at the evidentiary hearing, the Defense would be allowed to ask Mr. Perrin about one narrow situation regarding conflicting answers during a disciplinary investigation.

At the time of the evidentiary hearing on February 1, 2023, Mr. Perrin was suspended from the police force because he was pending assault charges and was released on electronic monitoring. Other than eliciting that background information, the Defense did not question Mr. Perrin about the pending assault charge because, at that point, Mr. Perrin had a Fifth Amendment privilege not to testify as to such matters. Mr. Perrin and Officer Dylan Burke testified for the Government at the evidentiary hearing. Mr. Johnson and Federal Public Defender staff investigator Justin Thompson testified for the defense. The Court heard legal argument on the motion to suppress on February 3, 2023. On February 8, 2023, the Court issued a Memorandum Opinion denying Mr. Johnson's motion. ECF 69.

The defense had maintained that Officer Perrin could not have and did not see a hand-to-hand transaction but, rather, stopped because he saw a youth, Ty, whom he had previously investigated. The Court acknowledged that "[m]uch of Officer Perrin's reasonable suspicion for the investigatory stop derived from his observation of a suspected hand-to-hand drug transaction between Mr. Johnson and Ty, for which there is no body-worn camera footage." ECF 69 at 7. But the Court found "Officer Perrin's testimony credible for several reasons," *id.*, and "credit[ed] Officer Perrin's testimony that he witnessed a suspected hand-to-hand transaction between Mr. Johnson and Ty while driving past the 500 block of Richwood Avenue on March 29, 2021," *id.* at 10. Having credited Officer Perrin's testimony, the Court then found Officer Perrin had reasonable suspicion to conduct the investigatory stop based on the totality of the circumstances: a "'clandestine' hand-to-hand transaction between Mr. Johnson and an individual known to engage

3

in CDS transactions [Ty], while located in a high-crime area," *id.* at 12, and "Mr. Johnson's flight," *id.* at 14.

On April 14, 2023, Mr. Johnson appeared in Baltimore City Circuit Court, and his state probation cases were closed out. Three days earlier, Mr. Perrin had appeared before Judge Barry Williams and entered an *Alford* plea to second-degree assault on his romantic partner. The Statement of Facts read into the record by Assistant State's Attorney Ernest Reitz states:

> Had this case proceeded to trial, the State would have presented witnesses who it believes would have testified in the following manner, that on September 10th of 2022, Ms. Na'ilah Hill responded to the Parkville precinct of the Baltimore County Police Department to report a domestic assault.
> Baltimore County officers determined the assault occurred just across the county line inside Baltimore City at 2806 Bauernwood Avenue. Officers from the Baltimore City Police Department then responded to the Parkville precinct and spoke to the victim. When asked to describe what happened, Ms. Hill indicated that her boyfriend, Randolph Perrin, had assaulted her and that he was an officer with the Baltimore Police Department.
> Officers, later that morning, transported both Ms. Hill and Mr. Perrin separately to the Baltimore Police Department Family Crime Unit to give formal recorded statements regarding the assault. Na'ilah Hill was interviewed by Detective Sergeant Matthew Disimone and described the incident by indicating she and Mr. Perrin were out separately on the evening of September 9th, 2022.
> Perrin picked her up at approximately midnight. Ms. Hill insisted on driving home because Mr. Perrin appeared intoxicated. Perrin became angered and refused to allow Ms. Hill to drive.
> Once they arrived at home, they began to – their argument began to intensify. Due to prior incidents of violence, Ms. Hill began to record their argument on her cell phone. She then grabbed the blanket off Mr. Hill's [sic] bed that he was laying under to go to sleep in another bedroom as he had laid on the bed.
> Mr. Perrin got out of bed and grabbed Ms. Hill by the hair with one hand and the blanket with his other hand. Hill then slammed – excuse me, Perrin then slammed Ms. Hill to the floor several times. Perrin then pulled Hill onto the bed and began twisting her wrist to try and get her phone away from her.
> Ms. Hill reports she felt Hill [sic] was going to break her wrists. She then began to flail her arms and legs to try and get away and Perrin placed her in a headlock. Ms. Hill indicated while in a headlock, the suspect constricted her airway. She was unable to breathe and felt as though she was going to pass out.
> At that moment, Ms. Hill bit Mr. Perrin on the chest to get him to release her neck. Ms. Hill further reports that Perrin punched her in the head several times

4

as he attempted to wrestle the phone away from her. After being bitten by Ms. Hill, Perrin grabbed her neck with his right hand and grabbed her cell phone with his left hand. Perrin gained control of the cell phone and the assault seized [sic].

Mr. Perrin then went to bed and Ms. Hill left to report the incident to law enforcement. She did not know where the police station was located, so she Googled the closest precinct and was directed to the Parkvillle precinct of the Baltimore County Police Department.

During the interview, officers observed what appeared to be strangulation marks on Ms. Hill's neck which were consistent with her description of the incident. Ms. Hill also presented with a contusion to the left side of her face and marks to her shoulder, back, elbows and wrists.

Ms. Hill was later transported to Mercy Hospital where she was given a forensic examination. The forensic examination noted petechial hemorrhages in the left eye and retinal hemorrhages in the right eye which are both evidence of strangulation. The exam also discovered bruising and abrasions to the forehead, upper lip, right side of the neck, left side of the neck, under the chin, left side of the face as well as the shoulders, back, arms and wrists.

Mr. Perrin was interviewed by Detective Sergeant Matthew Disimone at the Baltimore Family Crime Unit and confirmed that he and Ms. Hill had an argument, but he could not remember what the argument was about. Perrin said he went to bed to end the argument and that Ms. Hill entered his room and struck him in the head with an unknown object.

Observers observed a contusion on Perrin's forehead. Perrin said that he got out of bed and Ms. Hill grabbed his blanket. He said they began to fight over the blanket during which time he tried to wrap her up as she was punching and kicking him. Perrin also showed officers a bite mark he sustained on this chest during the assault.

Mr. Perrin then admitted that he tried to take Ms. Hill's cell phone by pushing her up against the wall with his forearm and applying pressure on her neck. He also admitted that he then used his elbow to strike Ms. Hill in the face approximately two to three times.

Mr. Perrin openly admitted that he then grabbed Hill by the throat with his left hand and attempted to grab her phone with his right hand. Mr. Perrin said that once he had Ms. Hill's phone, the altercation ended and he went to bed.

When asked about the injuries to Mr. Perrin, Ms. Hill openly admitted to kicking, punching and biting the suspect during the assault in order to get him to release her throat. Ms. Hill was able to capture audio of the assault which corroborates her version of the incident.

Although the home had security video monitoring system, after the altercation it's alleged that Mr. Perrin removed Ms. Hill from the account to prevent her from accessing the video footage. All of these events occurred in the City of Baltimore, State of Maryland,

If called to testify, Ms. Hill would have identified the defendant as Randolph Perrin seated to my left with counsel at trial table. The State believes, Your Honor, that those would have been the facts that were adduced at trial.

Exhibit 1 at 78-82.

The U.S. Attorney's Office later disclosed that Mr. Perrin had been fired from the Baltimore City Police Department, and provided additional materials covered by the Protective Order in this case. Those incidents will be discussed below and will be redacted in the publicly available filing of this Motion as required by the Protective Order in this case. Based on this new information that goes directly to Mr. Perrin's credibility, Mr. Johnson asks the Court to reconsider its denial of his Motion to Suppress Tangible Evidence.

## LEGAL STANDARD

The Court can reconsider its decision on a motion to suppress. *See U.S. v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (upholding district court's grant of government's motion to reconsider decision to suppress evidence).

> Specific situations where circumstances may warrant reconsideration include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. We have specifically held that a motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.

*Id.* (internal quotation marks and citations omitted).

This case clearly falls into the second category—new evidence previously unavailable. Mr. Perrin was not convicted of second-degree assault until three months after the evidentiary hearing and the Court's ruling. The U.S. Attorney's Office did not finish disclosing the files pertinent to the other issues discussed below until August 8, 2023. As such, Mr. Johnson could not have briefed and brought these issues to the Court's attention prior to the evidentiary hearing or the Court's ruling.

6

Moreover, the Fourth Circuit has held that the fact "that evidence was available to the movant prior to the suppression hearing does not, as a matter of law, defeat a motion for reconsideration in a criminal case," *United States v. Dickerson*, 166 F.3d 667, 679 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000). Thus, it must be the case that a motion to reconsider is appropriately filed when evidence does become available that was not available to the movant prior to the Court's ruling. As such, the Court has the authority to consider this new information regarding Mr. Perrin's credibility.

## ARGUMENT

**I.  The facts surrounding Mr. Perrin's investigation and ultimate conviction for domestic violence move in favor of discrediting his in-court testimony (the "DV incident").**

As described *supra*, at the time of the motions hearing in this case, Mr. Perrin was unavailable for cross-examination regarding his then-pending criminal charges because he had a Fifth Amendment right to remain silent as to those charges. Those charges have since resolved, and reveal a troubling pattern of disreputable and dishonest behavior, which this Court should take into consideration in reassessing Mr. Perrin's overall credibility.

First, Mr. Perrin was intoxicated during this incident, drove while intoxicated, and tried to hide and then minimize his criminal conduct from investigators. █████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

7

███████████████████████████████████████████████████████

■

       This was included in the statement of facts utilized at Mr. Perrin's guilty plea hearing. Specifically, as discussed above, the State indicated that N.H. insisted on driving because she noticed that Perrin was intoxicated, but that Perrin drove anyway and would not let her drive.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████ ███████████████████████████████████████████████

██████████████████████████████████████

      ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ ███████████████

      ████████████ again ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

other evidence were recovered from the scene so as to corroborate Mr. Perrin's claims in this regard. Although Mr. Perrin did have an injury to his head, this occurred when N.H. struggled and kicked in self-defense to escape Mr. Perrin as he was choking her. █████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

██████████████████████████ ████████████

███████████████████████████████████████

███ █████████████████████████████████ █

███████████████████████████████████████

███████████████████ ███████████████████

███████████████████████████████████████

██████ █████████████████████████ ██████

███████████████████████████████████████

██████ ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

───────────────────

[2] These records were produced by the government pursuant to the protective order and can be furnished to chambers upon request.

9

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████

      ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████

Last, but certainly not least, Mr. Perrin destroyed evidence in the course of the DV incident, which undoubtedly bears directly on his credibility. ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████<sup>█</sup> █████████████████████████████████████████████████████████

████████████████████████████████████  ███████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████

Mr. Perrin's repeated acts, lies, and omissions throughout the DV incident and the surrounding investigation leads to one conclusion: that Mr. Perrin will lie under pressure, will obfuscate to protect himself, and does not care about preserving the truth. In the case involving Davon Johnson, Mr. Perrin was driving while texting (an illegal act in Maryland and in most states) when he saw a group of young people on a street corner in Baltimore. He recognized one of those young people. Instinctively, he turned his vehicle around and approached the group. When Mr. Johnson ran, he pursued him. And, ultimately, Mr. Perrin used force to arrest Mr. Johnson. Thus, similar to the DV incident, Mr. Perrin found himself in a position where he needed to not only justify an arrest, but justify his behavior. That is when he claimed to have seen Davon Johnson

---

<sup>█</sup> ████████████████████████████████████████████████████████████████████████████████████████████████████████

conducting a hand-to-hand drug transaction—not contemporaneously over the radio, not in communication with his backup officer (Officer Burke), but after the fact, when faced with the prospect of writing a report to justify his actions. No other eyewitness testimony or evidence documented this observation of a hand-to-hand transaction—Mr. Perrin was the only source. Thus, the Court would have to credit the testimony of a former officer who admittedly and repeatedly broke the law (from driving while intoxicated to assaulting a romantic partner), who destroyed evidence, and then lied in a sworn statement in an effort to save himself from a conviction. In light of this new evidence, the Court cannot credit Mr. Perrin's statement that he observed Mr. Johnson engaging in a hand-to-hand drug transaction, and should thereby reconsider its denial of Mr. Johnson's motion to suppress.

[redacted]

13

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

    ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████

    ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████  ████████████████████████████████

███████████████████████████████████████████████████████████

████████████████  ████████████  ██████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

14

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ █████████ ██████████████████████████

███████████████████████████████████████████████████████████

██████████

           ██████████████████████████████████████████████

██████████ █████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

15

## CONCLUSION

As a result of information that has become available since the Court's ruling on Mr. Johnson's Motion to Suppress, Mr. Johnson asks the Court to reconsider its ruling and suppress the evidence in this case.

>Respectfully submitted,
>
>JAMES WYDA
>Federal Public Defender
>
>_____/s/_____
>KATHERINE TANG NEWBERGER (#27803)
>CYNTHIA A. FREZZO (#817358)
>Assistant Federal Public Defenders
>Office of the Federal Public Defender
>100 South Charles Street
>Tower II, 9th Floor
>Baltimore, Maryland  21201
>Phone: (410) 962-3962
>Fax:  (410) 962-3976
>Email: katherine_newberger@fd.org