**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Criminal No. SAG-21-0391** |
| **DAVON JOHNSON,** | * | **UNDER SEAL** |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

The United States of America, by counsel, hereby responds to the defense motion for reconsideration (ECF 97) of the Court's denial of the defendant's motion to suppress (ECF 69).

The Court should deny the motion. Overwhelming evidence supported the Court's findings of fact concerning the events of March 29, 2021. Although the defense continues to want to make this case about everything except what happened on March 29, it is the events of that day that are relevant. For several reasons, the defendant's proffered impeachment information does not change that.

First, the Court's decision was supported by witness testimony as well as body-worn camera footage that provided overwhelming corroboration for that testimony. Second, the defense's proffered impeachment information pertains to incidents wholly unrelated to the case in question, and more specifically, wholly unrelated to the corroboration points on which the Court based its holding. Third, the defense's motion to reconsider does not impact the Court's findings concerning the defendant's unprovoked flight from the police and the fact that he did so in a high-crime area. Finally, because the drug evidence was recovered from the street as a result of non-

police, civilian conduct, the Court has an independent basis to deny the motion to suppress, also

unaffected by the defense's reconsideration arguments.

## ARGUMENT

The motion for reconsideration[1] is built on two prior acts involving now-former Detective

Perrin.  One incident is his conviction in the domestic violence case, for second degree assault in

the Circuit Court for Baltimore City (the "domestic violence conviction").

For several reasons, the proffered impeachment information does not materially impact (or

impact at all) the relevant facts upon which the Court denied the motion.

## I.     THE NEW INFORMATION DOES NOT IMPACT THE CORROBORATING EVIDENCE SUPPORTING THE COURT'S FACTUAL FINDINGS.

The motion to reconsider fails because the Court did not base its ruling on the testimony

of a single uncorroborated witness.  The defense wants it to be that kind of case, but it is not.

The Court denied the motion to suppress in a Memorandum Opinion (ECF 69) dated

February 8, 2023 (the "Opinion").  A copy of the Opinion is attached as Exhibit 1.  A review of

the Opinion demonstrates that its reasoning and the factual findings remain firm, notwithstanding

---

[1]     Local Rule 105.10 generally requires that a motion for reconsideration be filed within 14 days of the order being challenged.  Assuming that time limit potentially applies here, the government will not oppose the motion on the grounds of timing.  Given that the domestic violence criminal case          were resolved subsequent to the motion to suppress being decided, the government does not object to the matters being presented in this motion for reconsideration.

However, the government does emphasize that its position on timing here is based on the particular, unique facts of this case. The government's decision not to raise the timing issue should not be taken as a general statement about the policies or practices of the government in response to motions for reconsideration in other cases.

the defense's proffered information.  The Court's factual findings were supported not only by the testimony of former Det. Randolph Perrin, and not only on the testimony of Det. Dylan Burke, but also by unassailable police body-worn camera (BWC) video evidence that confirmed the details of the witness testimony.  In particular, there was overwhelming corroboration for Perrin's testimony that he observed a hand-to-hand interaction between Davon Johnson and another person identified as "Ty," prior to Perrin's approach of the defendant.

In its attempt to characterize this as a case turning solely on the testimony of a single witness, the defense ignores all of the evidence corroborating Perrin's testimony.  The testimony is corroborated by the BWC footage in numerous ways, which the Court detailed in the Opinion.  Furthermore, none of that corroborating evidence is called into doubt by the impeachment information described in the reconsideration motion.

In the Opinion, the Court described the following points corroborating Perrin's testimony:

First, the Court recognized that Perrin's testimony was consistent with the BWC video with respect to Perrin's stopping his car, getting out, observing the juvenile "Ty," and the general positions of the defendant and Ty on the street.  Exhibit 1 at 7-8.  That corroboration remains unchanged by the reconsideration arguments.

Second, the Court noted the "restrained" scope of Perrin's suppression hearing testimony.  Exhibit 1 at 8.  Perrin was clear about what he saw and what he did not see.  Again, nothing has changed in that regard.

Third, the Court noted that Perrin's immediate reaction was consistent with having viewed a hand-to-hand event, as he testified.  Exhibit 1 at 8.  That finding was supported by everything on the body worn camera.  Perrin's decision to approach the defendant, as well as then-Officer

Burke's observations of Perrin, were consistent with Perrin seeing something warranting his subsequent actions.  *Id.*

Fourth, Perrin's actions after getting out of the car and pursuing the defendant also corroborated his testimony that he had observed a hand-to-hand event.  The Court explained the relevant facts in its Opinion (Exhibit 1 at 8-9) and those facts are proven by the video footage.

The Court' Opinion noted other evidence, all clearly visible on the body-worn camera video, disproving the notion that Perrin made up the hand-to-hand interaction between Johnson and Ty in an after-the-fact attempt to explain himself.  Specifically:

- Consistent with the testimony and police reports, Ty was actually there, on the street, visible on both Perrin and Burke's BWC videos during the flight.  Ty was walking away from the position where the described interaction with defendant Johnson would have occurred.

- Perrin's statement to his police colleagues - "I want Ty – that's who he was giving it to," Exhibit 1 at 4 – demonstrates that he had observed what he believed to be a drug deal between Johnson and Ty.  That Perrin was already thinking about the possibility of getting information about Ty, within minutes of his apprehension of Johnson, utterly belies the notion that Perrin chased Johnson for no reason and then invented a story after the fact that happened to involve Ty.

Fifth, the Court noted the behavior of nearby civilians, whose conduct was consistent with them being aware of Johnson's drug activities (which in turn supported a finding that they had seen those activities).  Exhibit 1 at 9.  Specifically:

- On the video, "Ty" could easily be seen holding something in his right hand as the officers pursued Johnson – consistent with Perrin's statement that he had seen a

hand-to-hand interaction in which Johnson conveyed something to Ty.[2]

- During the police struggle, the blue-jacket bystander knew exactly where to grab a bag from Johnson's left pocket, the very bag that happened to be filled with drugs, which the bystander was able to locate, pull out, and spill all over the street. It is clear from that bystander's actions that the bystander knew Johnson had drugs and knew that the drugs would be found in the bag in Johnson's pocket.[3] All of this conduct was consistent with the fact that the bystander had observed the same kind of activity that Perrin had observed: Davon Johnson engaged in drug activity on the street. Exhibit 1 at 9.

One other segment from the BWC should be noted: the defendant ran from the police, but not a single other person ran. That the defendant was the only person to run, and that he ran

---

[2]     The defense pointed out during the hearing that Ty was still cupping something in his hand a few minutes later while the police struggled with Johnson. That does not disprove that Ty had received something from Johnson – it only shows that he was still holding in his hand. The defense might argue that if Ty had drugs, Ty would not have been comfortable approaching the police. Normally that might be true, but at the time the police were still struggling with the defendant and were unlikely to bother with Ty, or anyone else. Moreover, as the Court may recall, civilians on the street were perfectly comfortable picking up the spilled drug caps from the street, even with the officers right there. As unusual as it may seem, at that moment everyone seemed fine picking up drugs even within view and within a few feet of police. They felt safe because Johnson had the police occupied.

[3]     The Court likely recalls that the blue-jacket bystander continuously tried to retrieve the bag from Johnson pocket and that he even ignored police commands to stand back. It is clear from the video that the bystander was very anxious to grab that bag and get it away from Johnson. The bystander obviously knew what the bag was, where it was, and that it needed to be gotten away from Johnson. That bystander's actions are what led to the ultimate disclosure of the bag's contents and to those contents (drugs) being spilled all over the street (where they were later retrieved by the police).

immediately, also corroborates the fact that the defendant knew that the police had seen him doing something that could get him detained – like a hand-to-hand drug deal.[4]

All of this corroborating evidence supported Perrin's testimony about the hand-to-hand, and none of it is disturbed by the new impeachment evidence.  The defense cross-examined Perrin mightily during the hearing.  In the end, the Court was correct to credit Perrin's observations about the hand-to-hand despite the defense efforts to impeach him – because of the entire record and the strong corroboration on the BWC video.  The motion to reconsider should be denied.

## II.   THE IMPEACHMENT EVIDENCE DOES NOT MATERIALLY IMPACT THE FACTUAL ISSUES IN THIS CASE.

Apart from the corroborating points discussed above, for several reasons the proffered impeachment evidence does not materially affect the Court's credibility determinations and findings of fact.

First, neither incident involves any judicial or administrative finding of dishonesty or falsity by a court or agency, and no such admission by the witness.  Both cases are unquestionably serious matters: the witness pled guilty to a crime in the domestic violence criminal case

---

[4]     Ty did not run, and the defense might argue that his decision not to run disproves the notion that *he* had engaged in a drug deal.  That argument can be made perhaps, but more likely is that Ty knew the police were after Johnson, who ran away immediately and made himself the subject of the police chase.  Ty was certainly mindful of the police presence as they passed him by (although in fairness staring at a police officer in such a situation is not unusual).

The defendant's flight from the police was also consistent with him knowing he had illegal drugs and a gun on his person and not wanting to get caught.  The immediacy and extent of the defendant's flight and panic, however, also suggests that he knew he had been *seen* doing something.  The sequence of events makes it quite clear that the defendant knew they were chasing him, and him alone.

case did he admit to, plead guilty to, or was found to have committed anything that would be probative of "character for truthfulness or untruthfulness." Fed. R. Evid. P. 608(b).

Second, because the defense theory of impeachment is not based on the actual findings[5] in either case, any impeachment value would require the kind of minitrial on the details of the episodes that Rule 608(b) case law discourages.  *See United States v. Custis*, 988 F.2d 1355, 1359 n.1 (4th Cir. 1993).  The domestic violence conviction[6] does not require a witness in Perrin's position to agree with the defense's conclusions on issues like whether he should have admitted proactively to drinking and driving on the evening in question; or whether information was deleted from the victim's cell phone; or whether information was deleted from the home security system.

he defense's intended use of these prior incidents would require more than a minitrial; it would require multiple minitrials on every individual inference that the defense wants the Court to make.

For purposes of this argument, the government assumes that the Court will consider the two prior cases for whatever they are worth and that some facts within each case might have some relevance to credibility.  Even with that assumption, the facts of the other cases are simply too remote and the defense impeachment theories too inferential to impact the Court's findings here.

---

[5]        The government is not arguing that the designated findings of the criminal case ▮▮▮▮▮▮▮▮ ▮▮▮re dispositive.  But, the absence of actual relevant findings on credibility issues underscores that the defense impeachment theory is based on highly debatable inferences drawn from the prior cases.  The defense impeachment theories would trigger a substantial minitrial on the particular points it wishes to assert.

[6]        This is not a situation in which the defense merely wishes to impeach a witness with the existence of a prior conviction, as under Fed. R. Evid. 609.

The government will discuss the two cases (and how the defense seems to want to use them) in the following two sections.

        A.    <u>Domestic Violence Conviction</u>

The defense sums up its alleged link between the domestic violence conviction and the instant case as follows: "Mr. Perrin's repeated acts, lies, and omissions throughout the DV incident and the surrounding investigation leads to one conclusion: *that Mr. Perrin will lie under pressure, will obfuscate to protect himself, and does not care about preserving the truth*." Motion at 11 (emphasis added). The notion of how the witness will act under "pressure" and when necessary to "protect" himself is fundamental to the defense's attempt to connect the domestic violence conviction and the instant case.

The defense theory fails because there is no indication that Perrin acted under any such "pressure," or made decisions borne from a desire to "protect" himself, during critical moments connected with the arrest of Davon Johnson. Specifically, the pressure/protect theory is belied by the witness's conduct on the Davon Johnson BWC video, particularly the aforementioned statement "I want Ty - that's who he was giving it to" (Exhibit 1 at 4, Opinion). The "Ty" statement contradicts utterly the defense notion that Perrin's description of the events was motivated by pressure or self-protection because no such pressure or desire for self-protection was present at the moment of that statement. The timing, demeanor, and context of the "Ty" statements simply do not reflect a calculated attempt by Perrin, at that time, to try to justify his pursuit of the defendant moments earlier.

The Court has had an opportunity to view the BWC footage of Perrin making the "Ty" comment. The Court knows the timing and the context in which the statement was made, within moments of Perrin and Det. Burke apprehending the defendant, struggling with him, and beginning

the process of picking up the drugs from all over the street.  The Court has seen Perrin's demeanor at that moment on the BWC – including what he was focused on and what he clearly had on his mind at that time.  Perrin's demeanor when he made the "Ty" statement[7] is not the demeanor of a person who is worried about getting into trouble, stressed about having made a bad call, or feeling "pressure" to "protect" himself about a bad arrest.  To the contrary, the BWC shows a police officer who (from his point of view) had every reason to feel comfortable about his decisions.  The defendant had done everything that a guilty person would be expected to do (running, resisting, preventing police from getting him under control).  Contraband including drugs (strewn all over the street) and the gun from the defendant's front satchel had been recovered.  The arrest had been made and evidence recovered, and no one had gotten hurt.  From the officers' perspective at the time, this was a successful, good arrest.[8]

In sum, the "Ty" statement is the best evidence of Perrin's state of mind at that moment. It was the voice of a person who was convinced that Ty and the defendant had done a drug deal together, and who believed that Ty would be worthwhile pursuing as a target in his own right. This is not the voice of a person making up information about Ty merely to justify an earlier arrest of another person.

---

[7]      Indeed, as the government has argued previously, Perrin's demeanor throughout the BWC footage is not consistent at all with the pattern that the defense wishes to put together from the other episodes.  The past cases cited in the motion to reconsider are seriou ▓▓▓▓▓▓▓▓▓▓▓ But they simply do not reflect the type of conduct displayed by Perrin at the time of Johnson's detention and arrest.

[8]      The defense may believe Perrin did wrong by detaining and arresting Johnson.  But the BWC makes abundantly clear that in the immediate aftermath of the arrest, Perrin and other officers believed that the arrest had gone well.  On a basic level, the defense's theory about Perrin's desire under "pressure" to "protect" himself is based on the assumption that Perrin agrees with the defense that this was a bad arrest that required some kind of false justification.  The BWC simply does not show such concerns on Perrin's part.

All of this disproves the defense notion that Perrin felt under "pressure" in the wake of the Johnson arrest to provide "post-hoc rationalizations" for his conduct (Motion at 11, 16). The defense relies on this theory to create a commonality between Perrin's conduct during the Johnson case and his conduct in connection with the domestic violence charges. The problem is that there is no evidence whatsoever that such "pressure" was being applied to Perrin when he made the "Ty" statement. No one was quizzing Perrin at that moment about the reason for pursuing Johnson. No one was questioning Perrin or demanding explanations from him. As stated above, everything about the activities at the scene indicates that everyone thought the arrest was a job well done.

Any defense attempt to explain away the "Ty" statement must rest on the following, implausible notion (if the government understands correctly): that Perrin, within moments of apprehending the defendant and with everything else going on, suddenly came up with the idea in his mind that perhaps he did not have enough to justify the chase and that he had better sprinkle a statement about "Ty" into his BWC conversations just to make the arrest look better. All of this occurred to Perrin, moreover, despite no one (at that point) questioning him about why he made the pursuit or whether he had good cause to do so. Such a theory is, generously, farfetched.

All of this is in addition to the other corroborating information from the BWC noted in the Court's order. *See* Section I, above. As already discussed, the Court correctly noted the consistency between Perrin's testimony and his contemporaneously recorded decisions and conduct on March 29, the conduct of the blue-coat bystander, the presence and hand-cupping of Ty, etc. That corroborating evidence diminishes the defense characterization of Perrin being the "only source" with respect to the hand-to-hand transaction. Motion at 12. The defense is correct that Perrin is the only person who testified about the hand-to-hand transaction directly, but

substantial other events seen on the BWC also verified that the hand-to-hand had taken place (as the Court noted in its Opinion, Exhibit 1 at 7-10).

At one point the defense appears to suggest that Perrin made false statements in his report (or about Ty on the BWC video) because he was worried about his texting while driving.  Motion at 11 (discussing Perrin's texting while driving and his pursuit of the defendant, and then stating that "Mr. Perrin found himself in a position where he needed to not only justify an arrest, but justify his behavior").  If the defense is making this argument, it is unavailing.  It seems unreasonable to believe that Perrin's texting-while-driving worried him to such a degree (either alone or in combination with the detention and arrest of Johnson) that he decided he needed to throw in a false reference to "Ty" during a BWC conversation or include false information in a police report.  The witness's texting-while-driving does not support the defense's theory that he had a motive to concoct the "Ty" remark or lie in his report on March 29.



















### III. THE COURT'S FINDINGS CONCERNING THE DEFENDANT'S FLIGHT AND THE HIGH-CRIME AREA ARE NOT AFFECTED BY THE NEW INFORMATION.

Even if the proffered impeachment evidence has a material effect on Perrin's credibility, and even if there is an argument for reconsideration on that basis, the Court's denial of the motion to suppress was correct for reasons unrelated to Perrin's observations about the hand-to-hand.

The Court had a valid basis to deny the motion to suppress based just than its findings that the defendant fled from the police and did so in a high-crime area. *See Illinois v. Wardlow*, 528

U.S. 119, 124-25 (2000).  The Court found that the 500 block of Richwood Avenue in Baltimore City, Maryland was a "high-crime area" and the BWC footage shows Davon Johnson fleeing from the police.  Exhibit 1 at 12, 12 n.6 (Opinion).  The Court grounded those findings on background information about the area where the arrest took place and on indisputable information from the BWC showing the defendant's flight.  That information is not challenged in the motion for reconsideration.

Because those facts alone[16] justified the investigatory stop of the defendant, and because those facts are untouched by the proffered impeachment information, the Court should deny the motion for reconsideration regardless of the impact of the impeachment evidence on Perrin.

## IV.     THE NEW INFORMATION DOES NOT CHANGE THE FACT THAT THE DRUGS WERE NOT FOUND DUE TO POLICE ACTION.

Finally, the drugs in question were not found as a result of police action, let alone improper police action.  Therefore, the Fourth Amendment does not require the suppression of the drugs, or any of the evidence recovered as a result of the drug recovery.  This again is an alternative basis for the denial of the motion for reconsideration.[17]

The Fourth Amendment is directed exclusively at state action and evidence secured by private searches, even if illegal, need not be excluded from a criminal trial.  *See United States v.*

---

[16]     The Court did not say whether it would have upheld the detention solely based on the flight and high-crime issue.  However, the government believes that the Court had the option of doing so on this record, and that the record provides a sound alternative basis to deny the motion for reconsideration.

[17]     In its opposition response, the government argued that the lack of state action justified the recovery of the drugs from the street (ECF 44 at 25); however, the government did not advance this point during oral argument on the motion, and the Court did not adopt this theory in its denial of the motion.  As with the *Wardlow* argument above, the government does believe that the record supports denying the motion for reconsideration on this theory.

*Kinney*, 953 F.2d 863, 865 (4th Cir. 1992) (*citing Burdeau v. McDowell,* 256 U.S. 465, 475 (1921)).

In this case, the BWC video showed quite clearly that it was the blue-coated bystander civilian who snatched the drugs from the defendant and spilled them all over the ground.  Those drugs were revealed by a private citizen (not by the police) and were recovered from the ground (not from the defendant's person), and established probable cause to arrest the defendant, which in turn justified a search incident to arrest.  *See United States v. Currence,* 446 F.3d 554, 556 (4th Cir. 2006).  The drugs recovered from the street are admissible.  The gun recovered from the defendant's person during the ensuing search incident to arrest is admissible.  Therefore, the recovered evidence is not subject to suppression irrespective of the circumstances that precipitated Perrin's pursuit of the defendant.  This again is a basis upon which the Court may deny the motion.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Defendant's motion for consideration.

Respectfully submitted,

Erek L. Barron
United States Attorney


_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4895
Michael.hanlon@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify on this 10th day of October 2023, that a copy of the foregoing was sent by email to:

Cynthia A. Frezzo, AFPD, Esquire
Katherine Tang Newberger, AFPD, Esquire


_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

1